8:18MC146

FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

2018 JUN 29 AM 9:32

OFFICE OF THE CLERK



No. 3:18-CV-00252-CWR-FKB

SECURITIES & EXCHANGE COMMISSION,

*Plaintiff,*

*v.*

ARTHUR LAMAR ADAMS,
*et al.,*

*Defendants.*

ORDER APPOINTING RECEIVER

Before CARLTON W. REEVES, *District Judge.*

Defendants engaged in a multi-million dollar Ponzi scheme that defrauded hundreds of investors. This order appoints a receiver to manage Defendants' estates and describes the scope of receivership.

Thirty applicants submitted receivership applications to the Court. This pool of men and women was extremely impressive and unusually diverse. Applicants included lawyers

(ranging from solo practitioners to partners in law firms larger than any in Mississippi), accountants, academics, and other professionals from a dozen states across the country. Out-of-state applicants recognized the talents of Mississippi attorneys by proposing substantive alliances with them. The Secretary of State was right to support an open application process, without which many would never have had the opportunity to reveal their talents to this Court. Applicants offered compelling reasons for their appointment. The breadth and depth of their experiences made this Court's choice a difficult one.

The Court considered many factors when screening applications. A number of applicants lacked the appropriate professional experience for this case. Some with the right experience proposed hourly rates that were too high to justify, including rates of over $1,000 an hour. Others proposed to work with partner professionals less qualified than others in the pool. Occasionally, applicants or the firms they partnered with had, in practicing before this Court, demonstrated that they are unsuited to serve as a receiver.

Nearly all candidates, however, proposed laudable and bold steps to ensure that their recruitment and retention policies were inclusive. The Court was particularly impressed with members of the Mississippi bar who crossed long-established lines to forge entrepreneurial partnerships. The diversity of the applicant pool and the creativity of the respective proposals is worth noting.

Encouraging diversity in the judiciary is not a cure-all for the lack of that feature in the broader legal profession. Nor is encouraging diversity destined to result in true representation,

2

rather than tokenism masquerading as such. Nevertheless, in order to do justice, the judiciary must incorporate a wide array of experiences, facts, and perspectives into its decisionmaking processes – including the decisionmaking process of receivers, who act as extensions of the courts. When courts hire and appoint individuals to assist in their mission, they must ensure those opportunities are extended to all whom the judiciary serves. As this case proves, doing so enhances – rather than diminishes – the quality of the applicant pool.

Of all the candidate qualifications the Court took into account, perhaps the most important was the ability to exercise disinterested and informed judgment. This case involves what may be the largest Ponzi scheme in Mississippi's history, one in which many Mississippi residents and entities are entangled. Mississippi is a small state. The Receiver and her staff must be close enough to the state to understand its workings. But the Receiver must also be distant enough to preserve her impartiality, a key trait in a process that may involve clawing back funds from the connected and powerful. Many otherwise capable candidates were unequipped to navigate the real and apparent conflicts of interest their appointment would create.[1]

After weighing the applicants' professional experience, hourly rates, candor, judgment, and other qualifications, the Court believes that Alysson L. Mills, a member of the Mississippi bar and partner at the Louisiana firm of Fishman

---

[1] This should come as no surprise to the parties, given their discussion of a specific candidate's conflicts of interest at the hearing on this matter.

3

Haygood, LLP, is best suited to be Receiver. Mills is a graduate of the University of Mississippi School of Law, and clerked for Fifth Circuit Judge E. Grady Jolly. She has extensive federal court experience, including representation of bankruptcy trustees and securities purchasers in suits involving fraud and mismanagement. She has authored Supreme Court briefs and frequently argues in the Fifth Circuit.

Mills has proposed an experienced team of lawyers from Fishman Haygood to serve as her counsel, including individuals who have handled matters involving Ponzi schemes, complex bankruptcy disputes, and securities arbitration. Her team has represented individuals, companies, pension funds, hospitals, cities, and states. Firm partner Brent B. Barriere's experience makes him particularly qualified to serve as primary counsel to the Receiver. Most team members will bill at rates not to exceed $275 an hour, while two partners will bill at rates not to exceed $325 an hour.

The Court is satisfied that Mills has the experience, judgment, and talent to perform the duties and responsibilities of a receiver and act as an officer of the Court. Therefore, it is hereby ORDERED that Alysson L. Mills is appointed to serve without bond as Receiver for the estate of the Receivership Defendants, Arthur Lamar Adams and Madison Timber Properties, LLC. The Receiver shall take possession of the entirety of the Receivership Defendants' assets. The Receiver is authorized to retain the services of Fishman Haygood, LLP and other appropriate professionals. The scope of receivership is as follows.

# I
## General Powers & Duties of Receiver

The Receiver shall have all powers, authorities, rights, and privileges now possessed by the officers, managers, and interest holders of and relating to the Receivership Defendants, in addition to all powers and authority of a receiver at equity under all applicable state and federal law in accordance the provisions of 28 U.S.C. §§ 754, 959, and 1692, and Fed. R. Civ. P. 66, and shall assume and control the operation of the Receivership Defendants and shall pursue and preserve all of their claims.

No person holding or claiming any position of any sort with the Receivership Defendants shall possess any authority to act by or on behalf of the Receivership Defendants, with the exception that attorneys representing Defendant Adams in *U.S. v. Adams*, Case No. 3:18-CR-0088-CWR-LRA (S.D. Miss) may continue their representation.

The Receiver and her agents, acting within the scope of such agency as Retained Personnel, are entitled to rely on all outstanding rules of law and Orders of this Court and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment, or decree. In no event shall the Receiver or Retained Personnel be liable to anyone for their good faith compliance with their duties and responsibilities as Receiver or Retained Personnel, nor shall the Receiver or Retained Personnel be liable to anyone for any actions taken or omitted by them except upon a finding by this Court that they acted or failed to act as a result of malfeasance, bad faith, gross negligence, or in reckless disregard of their duties.

The Receivership Defendants shall indemnify, defend, and hold harmless the Receiver and the Retained Personnel from and against all actions (pending or threatened and whether at law or in equity in any forum), liabilities, damages, losses, costs, and expenses, including but not limited to reasonable attorneys' and other professionals' fees, arising from conduct or omission of the Receiver and the Retained Personnel under the terms of this Order, except for any such conduct or omission adjudged by this Court to be the result of gross negligence or willful misconduct.

Subject to the specific provisions below, the Receiver shall have the following general powers and duties:

(1) to use reasonable efforts to determine the nature, location, and value of all property interests of the Receivership Defendants, including but not limited to monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind and description, wherever located, which the Receivership Defendants own, possess, have a beneficial interest in, or control directly or indirectly ("Receivership Property" or, collectively, the "Receivership Estate"), including, but not limited to, (i) the following bank accounts: First Bank of Clarksdale, Account No. 7315736, Southern Bancorp Account Nos. 6454774, 6454367, and 6454359, and River Hills Bank Account No. 6755060 and (ii) Defendant Adams' principal residence located at 134 Saint Andrews Drive, Jackson, Mississippi, 39211;

(2) to use reasonable efforts to determine the nature and location of the books and records, client lists, account statements, financial and accounting documents, computers, computer hard drives, computer disks, internet exchange servers, telephones, personal digital devices and other informational resources, of whatever kind and description, wherever located, in possession of the Receivership Defendants, or issued by the Receivership Defendants and in possession of third parties ("Receivership Records");

(3) to take custody, control, and possession of all Receivership Property, Receivership Records, and any assets traceable to assets owned by the Receivership Estate; and, with prior approval of this Court upon ex parte request, institute such actions or proceedings to impose a constructive trust, to sue for and collect, recover, receive or take into possession from third parties all Receivership Property, Receivership Records, and any assets traceable to assets of the Receivership Estate;

(4) to manage, control, operate, and maintain the Receivership Estate and hold in her possession, custody, and control all Receivership Property, pending further Order of this Court;

(5) to open bank accounts for the Receivership Defendants;

(6) to use Receivership Property for the benefit of the Receivership Estate, making payments and disbursements and incurring expenses as may be necessary or

7

advisable in the ordinary course of business in discharging her duties as Receiver;

(7) to take any action which, prior to the entry of this Order, could have been taken by the officers, managers, and agents of and relating to the Receivership Defendants; including the termination of any personnel that the Receiver deems appropriate;

(8) to terminate any and all leases of the Receivership Defendants' personal or real property, or to sell any of the Receivership Defendants' personal or real property;

(9) to access all of the Receivership Defendants' bank accounts, securities accounts, and IT systems;

(10) to collect any management or advisory fees due and owing to the Receivership Defendant;

(11) to produce Receivership Defendants' records and to share information as reasonably requested with the staff of the Commission without a subpoena;

(12) with this Court's approval, to engage and employ persons in her discretion to assist her in carrying out her duties and responsibilities hereunder, including but not limited to accountants, attorneys, securities traders, registered representatives, financial or business advisers, liquidating agents, real estate agents, forensic experts, brokers, traders, or auctioneers;

(13) to take such action as necessary and appropriate for the preservation of Receivership Property or to prevent the dissipation or concealment of Receivership Property;

(14) to obtain, by presentation of this Order, documents, books, records, accounts, deposits, testimony, or other information within the custody or control of any person or entity sufficient to identify accounts, properties, assets, liabilities, or agents of and relating to the Receivership Estate or Receivership Defendants;

(15) without further order of this Court, to issue subpoenas for documents and testimony consistent with the Federal Rules of Civil Procedure;

(16) to investigate and, following this Court's approval upon ex parte request, to bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging her duties as Receiver;

(17) following this Court's approval upon ex parte request, to file a petition in bankruptcy for either or both the Receivership Defendants if the Receiver determines it to be necessary; and

(18) to take such other action as may be approved by this Court.

## II

### Duty to File Recommendation & Report

Within 60 days, the Receiver shall file a report with the Court as to the status of the Receivership Estate. Such report shall include:

(1) a description of all known assets of the Receivership Estate, their location, and to the extent possible, the Receiver's good faith estimate of the value of those assets;

(2) a list of secured creditors and other financial institutions with an interest in the Receivership Estate;

(3) to the extent practicable, a list of investors in the securities sold by the Receivership Defendants;

(4) any other known liabilities of the Receivership Estate;

(5) the Receiver's preliminary plan for the administration of the Receivership Estate, including a recommendation regarding whether bankruptcy cases should be filed for all or a portion of the assets subject to the receivership, a recommendation as to the appropriateness of forfeiture proceedings for any assets subject to the receivership, and a recommendation as to whether litigation against third parties should be commenced on a contingent fee basis to recover assets for the benefit of the receivership;

(6) to the extent not provided in response to the prior subject matters, the Receiver's preliminary recommendation as to the most reasonable and efficient methods for recovery, liquidation, and distribution of the Receivership Estate;

(7) the Receiver's recommendation as to whether the receivership created by this Order should be continued and the benefits of any such action; and

(8) any additional information that the Receiver deems relevant.

Upon consideration of this report, the Court shall consider whether to terminate the receivership or order such other relief as it deems appropriate.

### III

### Injunction Against Interference with Receiver

The Receivership Defendants and all persons receiving notice of this Order by personal service, facsimile, or otherwise, are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would:

(1) interfere with the Receiver's efforts to take control, possession, or management of any Receivership Property; such prohibited actions include but are not limited to, using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any Receivership Property;

(2) hinder, obstruct, or otherwise interfere with the Receiver in the performance of her duties; such prohibited actions include but are not limited to concealing, destroying, or altering records or information;

(3) dissipate or otherwise diminish the value of any Receivership Property; such prohibited actions include but are not limited to releasing claims or disposing, transferring, exchanging, assigning, or in any way conveying any Receivership Property, enforcing judgments, assessments or claims against any Receivership Property or any Receivership Defendant, attempting to modify, cancel, terminate, call, extinguish, revoke, or accelerate the due date of any lease, loan, mortgage, indebtedness, security agreement, or other agreement

executed by any Receivership Defendant or which otherwise affects any Receivership Property; or

(4) interfere with or harass the Receiver, or interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Estate.

The Receivership Defendants and their past or present officers, managers, and agents and all persons in active concert or participation with them, including any financial institution, shall provide the Receiver immediate access to and control and possession of Receivership Records and the Receivership Estate's assets, including securities and property of any kind, real and personal, as well as all keys, passwords, entry codes, and the original of all books, records, documents, accounts, computer printouts, disks, and the like.

The Receivership Defendants shall cooperate with and assist the Receiver in the performance of her duties, including by promptly acknowledging to third parties the Receiver's authority to act on behalf of the Receivership Estate and by providing such authorizations, signatures, releases, attestations, and access as the Receiver may reasonably request.

The Receiver shall promptly notify the Court and the Commission of any failure or apparent failure of any person or entity to comply in any way with the terms of this Order.

## IV

## Stay of Litigation

The following Ancillary Proceedings, excluding the instant proceeding and all police or regulatory actions and actions of the Commission related to the above-captioned enforcement action, are stayed until further Order of this Court: all civil

legal proceedings of any nature, including but not limited to bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature involving:

> (1) the Receiver, in her capacity as Receiver;
>
> (2) any Receivership Property, wherever located;
>
> (3) any of the Receivership Defendants, including subsidiaries and partnerships; or
>
> (4) any of the Receivership Defendants' or Receivership Estate's past or present officers, directors, managers, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise.

The parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding, including but not limited to the issuance or employment of process.

All Ancillary Proceedings are stayed in their entirety, and all Courts having any jurisdiction thereof are enjoined from taking or permitting any action until further Order of this Court. Further, as to a cause of action accrued or accruing in favor of one or more of the Receivership Defendants against a third person or party, any applicable statute of limitation is tolled during the period in which this injunction against commencement of legal proceedings is in effect as to that cause of action.

These provisions bar any person or entity, other than the Receiver, from placing either of the Receivership Defendants in bankruptcy proceedings.

## V

### Receiver Compensation

The Receiver is to be paid her reasonable compensation and expense reimbursement from the Receivership Estate. Such compensation and expense reimbursement shall require the prior approval of this Court.

Within 30 days after the end of each full month while the Receivership is in effect, the Receiver shall apply to this Court for compensation and expense reimbursement from the Receivership Estate through Monthly Fee Applications. Monthly Fee Applications shall contain representations that: (i) the fees and expenses included therein were incurred in the best interests of the Receivership Estate; and (ii) with the exception of her Receivership application, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

Monthly Fee Applications will be interim and will be subject to cost-benefit and final reviews at the close of the receivership. At the close of the receivership, the Receiver will file a final fee application, describing in detail the costs and benefits associated with all litigation and other actions pursued by the Receiver during the course of the receivership.

Monthly Fee Applications may, in the Court's discretion, be subject to a holdback in the amount of 25% of the amount of

fees and expenses for each application filed with the Court. The total amounts held back during the course of the receivership will be paid out at the discretion of the Court as part of the final fee application submitted at the close of the receivership.

At the close of the receivership, the Receiver shall submit a Final Accounting, in a format to be provided by Commission staff, as well as the Receiver's final application for compensation and expense reimbursement.

This Order supersedes prior orders of this Court only to the extent they conflict.

SO ORDERED, this the 22nd day of June, 2018.

s/ CARLTON W. REEVES
*United States District Judge*
